CENTER FOR DISABILITY ACCESS
Raymond Ballister Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Amanda Seabock, Esq., SBN 289900
Zachary Best, Esq., SBN 166035
Cara Townsend, Esq., SBN 220356
Mail: 8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
carat@potterhandy.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Chris Langer**,<br><br>   Plaintiff,<br><br>   v.<br><br>**Carvana LLC**, an Arizona Limited Liability Company,<br><br>   Defendants | Case No. 8:21-cv-00303-JLS-JDE<br><br>**FIRST AMENDED COMPLAINT**<br><br><br><br>Honorable Judge Josephine L. Staton |

Plaintiff Chris Langer ("Plaintiff") complains of Carvana LLC, an Arizona Limited Liability Company ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a disabled individual and a member of a protected class of persons under the Americans with Disabilities Act. Plaintiff suffers from Delayed Endolymphatic Hydrops (DEH) which has caused permanent partial hearing loss. He utilizes a variety of assistive listening devices in his day-to-day life, including hearing aids and headphones to compensate, though this still

does not enable him to receive complete aural communication. When consuming audio content such as movies or tutorials on the internet he turns on closed captioning in order to comprehend all of the content.

2. Defendant Carvana, LLC, ("Carvana") owned or operated the Carvana service offered in California, including in Orange County, in January 2021.

3. Defendant Carvana, LLC owns and/or operates the Carvana service offered in California, including in Orange County currently.

4. Defendant Carvana, LLC owned, operated, or is in a contractual relationship with another entity to operate on their behalf, the Carvana website, with a root domain of: carvana.com, and all related domains, sub-domains and/or content contained within it, ("Website") in January 2021.

5. Defendant Carvana, LLC owns or operates, or is in a contractual relationship with another entity to operate on their behalf, the Website currently.

6. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION:**

7. This Court has subject matter jurisdiction over this action as a court of general jurisdiction. This Court has personal jurisdiction over Defendants

because they conduct substantial business in the State of California, County of Orange and Defendants' offending Website is available throughout California.

8. Venue it proper in this Court because Defendant conducts business in this County.

9. Unlimited jurisdiction is proper because Plaintiff seeks a permanent injunction ordering compliance with the Americans with Disabilities Act.

**FACTUAL ALLEGATIONS:**

10. Plaintiff suffers from hearing loss and is a member of a protected class under the ADA.

11. Plaintiff relies on subtitles and closed captioning to consume audio in recorded content.

12. Carvana operates privileges or services out of a physical location in California. These services are open to the public, places of public accommodation, and business establishments.

13. Carvana's service is essentially a reimagining of a used car lot. Carvana stores its vehicles in physical "vending machines" in lieu of large parking lots and interfaces with its customers largely through its Website. Customers can pick up their vehicles in person or have them delivered.

14. Carvana's service is a sales or rental establishment that affects commerce as contemplated by 42 U.S.C. § 12181(7)

15. Carvana's Website is a nexus between the Carvana customers and the terrestrial based goods, privileges or services offered by Carvana.

16. The Website offered is a service or privilege offered to customers providing inducement to visit the physical location, offering information about the physical location and generating goodwill for the physical location.

17. Carvana offers videos on its Website to induce customers to purchase its goods and to provide ideas on how to use the service. Websites and videos are

1  some of the facilities, privileges, or advantages offered by Defendants to
2  patrons of Carvana.
3      18. Plaintiff was a prospective customer who wished to access Defendant's
4  goods and services: namely, shopping for vehicles and learning about other
5  services offered by Carvana.
6      19. Plaintiff visited the Website in January 2021 to confirm the business
7  was open, review any policies regarding customer safety, and look for
8  information about the company and its products.
9      20. The Website provides video content to cater to preferences of the variety
10 of consumers that prefer the varied experience of receiving information in that
11 format. Video content is a distinct medium that cannot be equivalently
12 replaced by standalone text.
13     21. When Plaintiff attempted to view video content on the Website, he
14 discovered that the videos lacked closed captioning, which made him unable
15 to fully understand and consume the contents of the videos.
16     22. Plaintiff experienced difficulty and discomfort in attempting to view
17 eight videos including: "What is Carvana?", "Purchasing from Carvana",
18 "Financing with Carvana", "Quality Inventory", "Carvana's Approach to
19 Lending", "Financing Basics", "7-Day Money Back Guarantee", and "Vehicles
20 Marked Coming Soon".
21     23. The visual media at issue in this complaint was found on or within links
22 direct from the Caravana website that can be reasonable considered contained
23 within the same website.
24     24. Each of the videos was accessed through the "Support and Contact" tab
25 included at the bottom of every page of the Carvana Website.
26     25. Once you click on "Support and Contact" a page loads with the heading
27 "Quick Answers" under which are a series of video thumbnails.
28     26. The video entitled "What is Carvana?" summarizes the Carvana car

sales or purchase procedure which includes the option to have the car delivered or picked up at a "vending machine".

27. The video entitled "Purchasing from Carvana" explains that once you've selected a car, a process that would normally take hours at a dealership can be completed in minutes. If further states that the purchaser can schedule a date and time for pick up or delivery.

28. The video entitled "Financing with Carvana" describes a quick credit application (2 minutes) that won't have any impact of the applicant's credit score.

29. The video entitled "Quality Inventory" describes the car certification process, a 150-point inspection, their policy of inspecting and improving mechanical and cosmetic aspects of the car.

30. Carvana's "Approach to Lending" video reassures the viewer that almost every customer is credit worthy and able to be pre-approved. The credit check process will have no impact on the applicant's credit report.

31. The video "7-Day Money Back Guarantee" explains the general idea behind the guarantee and certain limitations. Significantly, if the purchaser buys the car but decides to return within the limited window, they can expect a full refund of all their money paid.

32. The video "Financing Basics" describes tailored lending options.

33. The video "Vehicles Marked Coming Soon" (which appears to have been removed from the website) included essential information on how to search for and select a vehicle. The video explains that a written description of the cars is provided but that photos aren't initially available. Once the photo become available the purchases has the option to cancel the reservation. Some reservations require a deposit.

34. The content of each video bolsters the efficient and transparent car buying experience that Carvana advertises. Screened all together they provide

5

a summary of the process including key bits of information such as (1) car delivery or pick up from a vending machine; (2) the credit process; (3) worry free purchasing experience because of the return window. If the Website had been constructed equally accessible to all individuals, Plaintiff would have been able to navigate the website and avail himself of its services.

35. The Carvana Website identifies two vending machines in California, one in Westminster and another in Ontario. Both of these locations are proximate to Mr. Langer's home in San Diego, CA.

36. Carvana's car vending machines are advertised as automated car dispensers. The purchaser is provided a large token to place into a machine. This initiates an automated process in which customers are able to watch the car move through several stories within the glass structure into a loading area. Purchasers are then able to drive their vehicle off the lot with seven days to return.

37. Seeing your car come out of a large, multi-story vending machine building is a unique and inviting aspect of the Carvana transaction.

38. The vending machines are not fully automated as an employee must manually confirm the purchaser's identity and provide the token.

39. Currently, the Defendants either fail to provide an accessible website or Defendants have failed to maintain in working and useable conditions those website features required to provide ready access to persons with disabilities.

40. As a result of this inaccessibility Mr. Langer was deterred from further use of the Carvana Website and denied equal access to the services of privileges offered by Carvana's facilities. Despite multiple attempts to access the Website using Plaintiff's computer, Plaintiff has been denied the full use and enjoyment of the facilities, goods and services offered by Defendants as a result of the accessibility barriers.

41. Plaintiff personally encountered accessibility barriers and has actual

knowledge of them.

42. By failing to provide an accessible website, the defendants denied Plaintiff full and equal access to the facilities privileges or advantages offered to their customers.

43. Plaintiff has been deterred from returning to the website, and using Carvana's services, as a result of these prior experiences.

44. The failure to provide accessible facilities created difficulty and discomfort for the Plaintiff.

45. If the Website had been constructed equally accessible to all individuals, Plaintiff would have been able to navigate the website and avail himself of Carvana's goods and/or services.

46. Additionally, Plaintiff is a tester in this litigation and seeks future compliance with all federal and state laws. Plaintiff will return to the Website to avail himself of the Carvana goods and/or services and to determine compliance with the disability access laws once it is represented to him that the Carvana and the Website are accessible.

47. Plaintiff is currently deterred from doing so because of Plaintiff's knowledge of the existing barriers and uncertainty about the existence of yet other barriers on the Website. If the barriers are not removed, Plaintiff will face unlawful and discriminatory barriers again. Any return prior to the removal of all barriers would be a futile gesture.

48. The barriers identified above violate easily accessible, well-established industry standard guidelines for making digital content accessible to people with hearing-impairments to access websites. Given the prevalence of websites that have implemented these standards and created accessible digital content, it is readily achievable to construct an accessible website without undue burden on Carvana or a fundamental alteration of the purpose of the Website.

49. Compliance with W3C Web Content Accessibility Guidelines ("WCAG") 2.0 AA standards are a viable remedy for these deficiencies and a standard that has been adopted by California courts for website accessibility.

50. It's been established that failure to remove inaccessible website conditions violates the ADA and California law and requiring compliance with industry access standards is a remedy available to the plaintiff.

51. The website content was intentionally designed, and based on information and belief, it is the Defendants', policy and practice to deny Plaintiff access to the website, and as a result, deny the goods and services that are otherwise available to patrons of Carvana.

52. Due to the failure to construct and operate the website in line with industry standards, Plaintiff has been denied equal access to Defendant's stores and the various goods, services, privileges, opportunities and benefits offered to the public by Carvana.

53. Given the nature of the barriers and violations alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the Website that relate to his disability. In addition to the barriers he personally encountered, Plaintiff intends to seek removal of all barriers on the Website that relate to his disability. See *Doran v. 7-Eleven* (9th Cir. 2008) 524 F.3d 1034 (holding that once a plaintiff encounters one barrier, they can sue to have all barriers that relate to their disability removed regardless of whether they personally encountered the barrier).

54. Plaintiff will amend the complaint, to provide further notice regarding the scope of the additional demanded remediation in the event additional barriers are uncovered through discovery. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS**

**WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

55. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. Defendant is a public accommodation with the definition of Title III of the ADA, 42 USC § 12181.

56. The ADA is a remedial statute with a "broad mandate" to eliminate discrimination against disabled persons. *Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 (9th Cir. 2014). Discrimination is not limited to violation of prescribed standards. *Robles v. Dominos*, 913 F.3d 898, 906 (9th Cir. 2019). Discrimination is found where an individual is denied "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodation of any place of public accommodation." 42 U.S.C. § 12182(a).

57. Since at least 1996, the DOJ has "repeatedly affirmed the application of [T]itle III to Web sites of public accommodations." 75 Fed. Reg. 43460-01, 43464 (July 26, 2010).

58. The website provided by the Defendant is a service, privilege or advantage of Carvana's physical services.

59. When a business provides services such as a website, it must provide an accessible website.

60. Here, access to an accessible website has not been provided. A failure to provide an accessible website is unlawful discrimination against persons with disabilities.

61. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. *See*: 42 U.S.C.

§ 12182(a). Discrimination is defined, inter alia, as follows: "A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii)."

62. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

63. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

64. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

65. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code § 51(f).

66. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

67. Because the violation of the Unruh Civil Rights Act resulted in difficulty,

discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. *Cal. Civ. Code §* 55.56(a)-(c).

68. Pursuant to Cal. Civ. Code § 52(a) and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. A Declaratory Judgment that at the commencement of this action Defendants were in violation of the requirements of the ADA due to Defendants' failures to take action to ensure that its websites were fully accessible to and independently usable by hearing-impaired individuals, including providing closed captioning on all video content containing audio elements.

2. Pursuant to 42 U.S.C § 12181, injunctive relief compelling Defendants to honor the rights of the plaintiff under the Americans with Disabilities Act, specifically requiring Defendants to review all current audio-visual content on the Website for compliance with ADA requirements for equal access and implementing a policy of including closed captioning on all audio-visual content at the time that content is included within the Website as well as human verification that all future audio-visual media included within the Website are functional and closed captioned at a level comparable to industry standard closed captioning accuracy.

3. Damages under the Unruh Civil Rights Act § 51[1], which provides for actual damages and a statutory minimum of $4,000 for each offense.

4. "For equitable nominal damages for violation of civil rights. See *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) and any other equitable relief the Court finds appropriate."

5. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code § 52.

Dated: September 14, 2021    CENTER FOR DISABILITY ACCESS

By: _/s/*Cara Townsend*_

Cara Townsend, Esq.
Attorney for Plaintiff

---

[1] Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.